UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

JON SASMOR,                                              REPORT AND
                              Plaintiff,                 RECOMMENDATION

          - against -

STEVEN POWELL, et al.,                                   11-CV-4645 (KAM) (JO)

                              Defendants.
--------------------------------------------------------X

James Orenstein, Magistrate Judge:

          Plaintiff Jon Sasmor ("Sasmor") has asserted claims for declaratory and injunctive relief as

well as monetary damages arising from the execution of allegedly unconstitutional eviction

warrants at his residence. Docket Entry ("DE") 6 (Amended Complaint). The defendants include

the private management company and three individuals who own and manage the residence as

well a state court judge, a court clerk, and a city marshal who were at least nominally involved in

the eviction proceedings. All of the defendants have moved to dismiss the claims against them. *See*

DE 38; DE 45; DE 48. Sasmor has moved for a preliminary injunction barring any further

evictions – not only those that affect him, but also any evictions in New York State pursuant to a

statute he claims to be unconstitutional. *See* DE 54. Upon a referral from the Honorable Kiyo A.

Matsumoto, United States District Judge, I now make this report and respectfully recommend, for

the reasons set forth below, that the court deny Sasmor's motion for a preliminary injunction and

dismiss the Amended Complaint in its entirety, with prejudice as to all of the federal claims.

I.    Background

      A.    Facts

          Sasmor's claims arise out of a rent dispute involving the occupants of a rooming house at

287 Franklin Avenue, Brooklyn, New York ("287 Franklin"). That dispute has also given rise to

several eviction proceedings in New York City Housing Court (the "Housing Court") as well as a

separate lawsuit in which Sasmor and other residents of 287 Franklin have accused the private

defendants here and others of violating the Racketeer Influenced and Corrupt Organizations Act,

18 U.S.C. § 1961, *et seq. See Franklin Ave. Residents' Ass'n v. Meisels*, 11-CV-976 (KAM) (JO).

Rather than recount the full factual and procedural history of the parties' disputes, I provide below

a brief summary of the facts pertinent to the instant motions. I draw those facts from the allegations

in the Amended Complaint, which I assume to be true for purposes of the motions to dismiss, as

well as from the documents that pleading incorporates by reference and relevant public Housing

Court records.[1]

Sasmor moved into 287 Franklin – a rooming house he shared with nine other tenants – in

April 2010. The lease was signed by defendant Chaim Goldberger ("Goldberger) for defendant

Henry Management, LLC ("HM"). The building is purportedly owned by the Ronald Henry Land

Trust (the "Trust"), the trustees of which are defendants Isaac Teitelbaum and Abraham

Schneebalg (respectively, "Teitelbaum" and "Schneebalg" or, collectively, together with

Goldberger and HM, the "Private Defendants"). Amended Complaint ¶¶ 36-39. Initially, Sasmor

---

[1] The court may take judicial notice of documents integral to or referred to in the Amended Complaint, as well as documents filed in other courts and other public records. *See, e.g.*, *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006); *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005). The court may also take judicial notice of relevant pleadings, orders and judgments from a related action without converting the motion to one for summary judgment. *See Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("courts routinely take judicial notice of documents filed in other courts, ... not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings"); *Washington v. U.S. Tennis Ass'n, Inc.*, 290 F. Supp. 2d 323, 327 (E.D.N.Y. 2003) (relying on pleadings and judgments in a prior action in granting a motion to dismiss); *Marchon Eyewear, Inc. v. Tura L.P.*, 1999 WL 184107, at *2 (E.D.N.Y. Mar. 28, 1999) (same); *see also Nealy v. Berger*, 2009 WL 704804, at *1 (E.D.N.Y. Mar. 16, 2009) (taking judicial notice of court filings); *In re Enron Corp.*, 379 B.R. 425, 431 n. 18 (S.D.N.Y. 2007) ("Judicial notice of public records such as court filings, is clearly appropriate.").

occupied only a single room on the top floor of the building, but he began using additional rooms when other tenants moved out and gave him their keys. *Id.* ¶ 48.

Shortly after moving in, Sasmor began to suspect that the Trust did not actually own the building. In August 2010, he and the other tenants changed the building's locks and began depositing their monthly rent payments into an "escrow account" rather than making payment to any of the Private Defendants. *Id.* ¶¶ 40-44.

In January 2011, the New York City Department of Housing Preservation & Development ("HPD") determined after an inspection that the building had been illegally converted into a multiple dwelling and ordered a number of corrective measures, including vacating the rooms on the top floor. Amended Complaint ¶ 49; DE 48-2 (Declaration of Andrew Meier) ("Meier Decl.") Ex. 6 at 8 (HPD vacate order).[2] Based on HPD's determination, in March 2011, the Trust initiated summary proceedings for possession against Sasmor and the other tenants in Housing Court. The notice of petition in each proceeding identified the tenant to be removed and the particular room within 287 Franklin Avenue from which that tenant was to be removed. *See* Meier Decl. Exs. 7-9 (Housing Court petitions).

Sasmor appeared in Housing Court to oppose the petition in which he was named as a respondent. *See* Meier Decl. Ex. 12. He also sought to intervene in the proceedings against Kurt Fletcher ("Fletcher"), Amanda Diaz ("Diaz"), and Alexa Rosenbaum ("Rosenbaum") – each of whom by that time had moved out of 287 Franklin and whose former rooms Sasmor then began to occupy – on the ground that he had a right of possession to the rooms in which those respondents had once resided. *See* Amended Complaint ¶¶ 48, 54, 57-58; Meier Decl. Exs. 12-14. In each case,

---

[2]  The exhibits to the Meier Declaration consist of documents filed in or maintained by the Housing Court, as well orders and judgments issued by the Housing Court and the Appellate Term of the Supreme Court of the State of New York for the 2nd, 11th, and 13th Judicial Districts.

the Housing Court ruled that Sasmor lacked standing to challenge the petition and awarded judgment of possession to the Trust. *See id.* Ex. 12 at 1; *id.* Ex. 13 at 1; *id.* Ex. 14 at 3-4; DE 56-16 at 4 (transcript of Housing Court proceedings on April 28, 2011).

As a result of those rulings, the Housing Court issued eviction warrants in all three cases. *See id.* Exs. A-C.[3] Sasmor moved to stay execution of the warrants of eviction related to the rooms of Fletcher and Diaz, but the Housing Court again denied his motions because he lacked standing. *Id.* Ex. 12 at 8; *id.* Ex. 13 at 8. Sasmor then filed appeals of all three judgments of possession; in each case the appellate court dismissed the appeal on the ground that Sasmor was "not aggrieved by the final judgment" below. Amended Complaint ¶ 67*;* Meier Decl. Exs. 12 at 9; *id.* Ex. 13 at 9; *id.* Ex. 14 at 5.

The three warrants of eviction were then given to defendant Steven Powell ("Powell") in his capacity as a New York City Marshal. Powell executed the warrants on July 13 and 20, 2011. *Id.* ¶ 54 & Exs. A-C. Each warrant designated a specific room by its location (the rooms lacked identifying letters or numbers) and directed the Marshal to remove the named tenant as well as "all other persons from the premises." *Id.* ¶ 81 & Exs. A-C. Goldberger accompanied Powell as he executed the warrants, and pointed out to Powell the particular rooms referred to in the warrants. *Id.* ¶¶ 83, 114, 117. Powell did not look to the face of the warrants to identify the rooms, but instead relied on Goldberger's representations. *Id.* ¶¶ 83, 114.

---

[3] The name of defendant Carol Alt, the Chief Clerk of the Civil Court of the City of New York ("Alt"), was stamped on each warrant, and Alt "continues to direct that her signature be stamped on hundreds more unconstitutional eviction warrants daily, 'in the name of the People of the State of New York.'" *Id.* ¶ 98. Defendant Fern Fisher, the Deputy Chief Administrative Judge for the New York City Courts ("Fisher" or, collectively with Alt, the "Judicial Defendants") "is responsible for the administration and operation of the New York City Courts, including the procedures by which unconstitutional eviction warrants are issued." *Id.* ¶ 99. Sasmor does not allege that either of the Judicial Defendants were involved in any other way in the events at issue in this litigation.

On September 20, 2011, Goldberger returned to the building, accompanied by Schneebalg, a process server who was apparently working for Powell, and another man equipped with a drill and a crowbar. *Id.* ¶¶ 86, 121. The man with the tools drilled out the locks on the front door of the building and pried open the door, causing some damage to the doorframe. *Id.* ¶ 86. The process server then slipped Notices of Eviction addressed to individuals other than Sasmor over the doors of two rooms within the building. *Id.* ¶ 90. Despite these notices, no further evictions were executed at 287 Franklin prior to the filing of the Amended Complaint. *Id.* ¶¶ 93, 96.

The trial of the Housing Court proceeding relating to Sasmor's original room on the top floor of 287 Franklin began on November 29, 2011. Sasmor testified during the five-day trial, as did Goldberger, Schneebalg, and Teitelbaum. On October 10, 2012, the Housing Court issued a written Decision and Order awarding a judgment of possession to the Trust. *See* DE 58 Ex. A (Post-Trial Decision and Order in *Ronald Henry Land Trust v. Jon Sasmor and Lisa Lin*, N.Y. Civ. Ct. Kings Co., Index #64303/11) at 1-5.

B.    Proceedings

Sasmor filed his original Complaint on September 26, 2011 – after the service of eviction warrants but before the Housing Court trial described above. DE 1. On the same day, he filed a proposed order to show cause in which he sought a temporary restraining order and preliminary injunction barring further eviction proceedings. DE 2. The court immediately denied the latter request but permitted Sasmor to amend his complaint. DE 5. Sasmor then filed the pending Amended Complaint on October 11, 2013.

In the introduction to his Amended Complaint, Sasmor asserts that he seeks to challenge the constitutionality of "a New York statute that mandates the issuance of unconstitutional

'wildcard' general eviction warrants." Amended Complaint ¶ 1. Specifically he contends that Section 749(1) of the New York Real Property Actions and Proceedings Law ("RPAPL") is unconstitutional, both on its face and as applied, because it permitted him to be evicted from the rooms of his co-tenants without having been served process in those proceedings or individually named in a judgment. *Id*. ¶¶ 2-3. On the basis of that view and the factual allegations summarized above, the Amended Complaint asserts 13 causes of action, including both federal civil rights claims, *see id*. ¶¶ 132-148 (Counts 1-6, pleading claims under 42 U.S.C. §§ 1983, 1985(3)), and a variety of claims purportedly arising under state law, *see id*. ¶¶ 149-168 (Counts 7-13). Sasmor seeks declaratory and injunctive relief against all of the defendants, as well as an award of compensatory and punitive damages against Marshal Powell and the Private Defendants. *See id*. at 30-35 (prayer for relief). In addition to seeking permanent injunctive relief by means of his Amended Complaint, on July 27, 2012, Sasmor filed a motion for a preliminary injunction seeking to prohibit further evictions at 287 Franklin as well as the issuance of any further eviction warrants pursuant to RPAPL Section 749(1). DE 54.

All of the defendants have sought one form of dismissal or another. On March 21 and 22, 2012, respectively, Powell and the Private Defendants moved to dismiss the Amended Complaint for failure to state a claim. *See* DE 45 (Powell); DE 38 (Private Defendants); Fed. R. Civ. P. 12(b)(6). Because those defendants had already answered the Amended Complaint by that time, *see* DE 9 (Powell); DE 20 (Private Defendants), I construe their motions as seeking judgment on the pleadings. *See* Fed. R. Civ. P. 12(c); *see also*, *e.g.*, *NYMET Indus. Solutions, Inc. v. Maersk, Inc.*, 818 F. Supp. 2d 511, 512-13 (E.D.N.Y. 2011). On July 24, 2012, the Judicial Defendants moved to dismiss the Amended Complaint pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal

6

Rules of Civil Procedure. DE 48. After the parties had completed their briefing of all of the motions, the court referred them to me for a report and recommendation by order dated August 31, 2012.

II.    Discussion

The pending motions for dismissal and preliminary injunctive relief raise a host of legal issues; in addition to arguing the merits of Sasmor's substantive claims, the parties call upon the court to address a number of procedural questions relating to standing, immunity, and various concepts arising from the federal judiciary's interest in showing appropriate deference to its state counterparts. That apparent complexity, however, is only superficial: in essence, this case is the result of Sasmor's misguided attempt to transform a routine landlord-tenant dispute that can be (and apparently has been) properly handled in state court into a federal civil rights case against not only his landlord, but the state officials who for the most part are alleged to have done no more than discharge their lawful duties.

At the heart of all the claims now before the court lies Sasmor's contention that he seeks in this litigation to vindicate a "core" Fourth Amendment protection: "the right of a man to retreat into his own home." DE 51-1 (Sasmor's memorandum opposing the Judicial Defendants' motion) at 25 (quoting *Soldal v. Cook County*, 506 U.S. 56, 61 (1992)). That contention also reveals the essential flaw with all of Sasmor's federal claims: the home into which he wishes to retreat is not his own.

The pleadings and pertinent public records make it clear that Sasmor and other occupants of 287 Franklin were living in a building that was not permitted to be used as a multiple dwelling, and that those occupants took it upon themselves to change the locks on a property they did not

own and to withhold rent from their landlord. The unremarkable result of those choices was that the landlord set out to evict those occupants and that the relevant government officials performed their normal functions in response. Whatever the merits of the underlying dispute between the occupants of 287 Franklin and the Private Defendants – and in particular, even if Sasmor and his colleagues should ultimately prevail in that dispute – New York's courts provide an adequate forum for resolving it.

Those courts provided Sasmor with a full and fair opportunity to vindicate his contention that he has some property rights with respect to rooms in 287 Franklin from which he has been excluded. Should the owners of 287 Franklin seek to exclude him from other rooms in that building in the future, New York law will again give Sasmor a further opportunity to vindicate his perceived rights in the state's court system. As a result, he has suffered no cognizable injury that gives rise to any federal claim, and such claims should therefore be dismissed with prejudice. For that reason, the discussion below does not analyze all of the arguments now before the court, even though I conclude that there are several alternate reasons to dismiss the Amended Complaint. Instead, I focus exclusively on the reasons why the absence of any cognizable harm to Sasmor suffices to dispose of all the pending claims in this court.

A.    Standard of Review

The standard of review for a Rule 12(c) motion for judgment on the pleadings is the same as that for a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). *Irish Lesbian & Gay Org. v. Guiliani*, 143 F.3d 638, 644 (2d Cir. 1998). The court should consider the "legal sufficiency of the complaint, taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009) (citations

omitted). A complaint's assertions must state a claim "that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), meaning that the facts alleged allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* (alterations in original) (quoting Fed. R. Civ. P. 8(a)(2)).

     B.    <u>The Judicial Defendants</u>

The Judicial Defendants are named in only the first of the Amended Complaint's 13 counts. In that claim under Section 1983 of title 42, United States Code, Sasmor seeks injunctive and declaratory relief based upon the Judicial Defendants' involvement in the "requisition, issuance, and execution" of eviction warrants issued in the Housing Court pursuant to Section 749(1) of the RPAPL, a statute that Sasmor alleges is unconstitutional both on its face and as applied to him because it "commands the removal of all persons upon an eviction judgment against any one person, including the removal of other persons who have not been given notice and an opportunity to be heard," in violation of Sasmor's rights under the 4th and 14th Amendments. Amended Complaint ¶¶ 1, 20, 132-134.

The Judicial Defendants contend that this claim should be dismissed for a variety of reasons. They argue that this court lacks Article III jurisdiction for want of a "case or controversy," that Sasmor has failed to establish standing, that dismissal is warranted under various doctrines of abstention, that the claim is barred by the *Rooker-Feldman* doctrine, and that some of the relief

9

Sasmor seeks is unavailable against the Judicial Defendants by virtue of their Eleventh

Amendment immunity and pursuant to the Federal Court Improvement Act of 1996. *See* DE 48-1

(Judicial Defendants' memorandum of law); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923);

*District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); Pub. L. No. 104–317, 110

Stat. 3847, 3853 (1996) (amending 42 U.S.C. § 1983). While several of those arguments appear to

have merit, the court can and should dismiss the claim against the Judicial Defendants on the

ground that Sasmor lacks standing: he is estopped from asserting a property interest that was

impaired by any prior eviction warrant, and there is no more than a mere possibility that he will

suffer harm in the future as a result of any eviction warrants issued under the statute he challenges.

"In order to state a claim for deprivation of a property right under § 1983, three elements

must be proven: (1) that there was a property interest; (2) which was deprived under color of state

law; and (3) the deprivation must be without due process." *Morris v. Katz,* 2011 WL 3918965, at

*3 (E.D.N.Y. 2011) (citing *Mehta v. Surles,* 905 F.2d 595, 598 (2d Cir. 1990)). As explained

below, Sasmor is estopped from establishing the first of those three elements.

A party may not relitigate an issue that is identical to one that was necessarily decided in a

prior action and decisive of the pending action if, in that prior action, the party had a full and fair

opportunity to litigate the issue. *In re Hyman*, 502 F.3d 61, 65 (2d Cir. 2007). The question of

whether Sasmor has a property interest in the rooms at 287 Franklin for which eviction warrants

were served is plainly decisive here: if he has no such interest, then he has no standing to seek

redress for the issuance of those eviction warrants under Section 1983. It is equally plain that

Sasmor had a full and fair opportunity to litigate that issue in each of the Housing Court cases

described above (the proceedings against Fletcher, Diaz, and Rosenbaum), and that in each

10

instance the court necessarily resolved the issue against him. Indeed, in each of those cases, Sasmor litigated and lost the issue on the merits in both the Housing Court and then again on appeal.

To be sure, neither the Housing Court nor the appellate court explicitly held that Sasmor lacked a property interest. But the rulings of those courts necessarily relied on such a determination. New York law is clear that "all persons with rights of possession [to a] premises are considered necessary parties" in a summary proceeding for possession. *M & M Crown Realty. LLC v. Griffith*, 2011 WL 3370860, at *3 (N.Y. City Civ. Ct. June 17, 2011); *see also Cobert Const. Corp. v. Bassett*, 442 N.Y.S.2d 678, 680 (App. Term. 1981). Similarly, New York law allows a non-party to a proceeding to appeal a judgment if he can demonstrate that he "had some legal interest in the subject of the determination which was adversely affected thereby." *Matter of DeLong*, 455 N.Y.S.2d 896 (App. Div. 1982). Thus, in rejecting Sasmor's attempts to challenge the Housing Court petitions and to appeal the judgments of possession, the Housing Court and the appellate court each necessarily determined that Sasmor lacked a possessory interest in the room at issue in each case. As a result, Sasmor is estopped from relitigating in this action any claim that requires him to demonstrate a property interest in the rooms for which eviction warrants were issued. *See, e.g.*, *Sullivan v. Stein*, 487 F. Supp. 2d 52, at 64-65 (D. Conn. 2007) (determination of state court that plaintiffs had no possessory interest in residence had collateral estoppel effect in subsequent federal court § 1983 action); *Moran v. City of New Rochelle*, 346 F. Supp. 2d 507, 515 (S.D.N.Y. 2004) (state court's ruling that a party's property use was "merely incidental was tantamount to holding that it had no vested right ... and necessary to holding that it had no right to

continuing use," therefore party was barred "from arguing that it did have a property right" in subsequent § 1983 action).

Sasmor contends that he cannot be deemed to have had a full and fair opportunity in the state court proceedings to litigate the issue of his property interest in the rooms of Fletcher, Diaz, and Rosenbaum because he was not a named party to those proceedings, did not receive formal notice directed specifically to him, and therefore did not receive a hearing on the issue of his property interest. *See* DE 51-1 at 44, n.76. I disagree: the fact that the party against whom collateral estoppel is invoked was not a party to the prior proceeding is not an automatic bar to the doctrine's application. *See*, *e.g.*, *D'Arata v. New York Cent. Mut. Fire Ins. Co.*, N.Y.2d 659, at 665 (1990) ("[A] nonparty to a prior litigation may be collaterally estopped by a determination in that litigation by having a relationship with a party to the prior litigation such that his own rights or obligations in the subsequent proceeding are conditioned in one way or another on, or derivative of, the rights of the party to the prior litigation); *Moran*, 346 F. Supp. 2d at 515 ("nonparties who controlled the original suit are also bound by the resulting judgment"); *see also Matter of Halyalkar v. Board of Regents of State of New York*, 72 N.Y. 2d 261, 268-69 (1988) ("Collateral estoppel is a doctrine based on general notions of fairness involving a practical inquiry into the realities of the litigation" and should not be "rigidly or mechanically applied.").

Regardless of his formal status in the Housing Court and appellate proceedings, the record makes manifest the fact that Sasmor had actual notice of those proceedings and therefore cannot have suffered any cognizable harm as a result of the fact that, as a non-party to the leases at issue, was not given formal, direct notice. More fundamentally, the public court records demonstrate that Sasmor was given a full opportunity in the state proceedings to litigate his claimed property

interest in the rooms of Fletcher, Diaz, and Rosenbaum as a basis for opposing the issuance of eviction notices that resulted in his exclusion from those rooms.

In seeking to vindicate his claimed property interest in the rooms at issue in the Housing Court proceedings, Sasmor argued, among other things, that he was a necessary party to those proceedings because he had obtained permission to use the rooms from the former tenants, that he was a party to a joint lease that covered the entire building, that he was in actual possession of the rooms at the time the petitions for eviction were filed, and that he remained in possession as of the date he sought to intervene in each proceeding. *See* Meier Decl. Exs. 12-14. The Housing Court necessarily rejected all of those arguments, and those rulings on the merits estop Sasmor from pressing his arguments here. To the extent Sasmor now wishes to raise additional arguments as to why he had a property interest in the rooms at issue in the Housing Court proceedings, he could and should have made them there, and the doctrine of *res judicata* precludes him from doing so now for the first time in this litigation. As a result, he cannot claim any cognizable injury arising from the Judicial Defendants' involvement in the issuance of eviction warrants for the rooms of Fletcher, Diaz, and Rosenbaum.

To the extent that Sasmor's claim regarding the constitutionality of "all persons" warrants is predicated on an alleged property interest in three additional rooms in 287 Franklin for which warrants of eviction have not yet been executed, he lacks standing because Sasmor has to date suffered no injury in fact and can demonstrate no more than a "mere possibility" of future harm. *See Iqbal,* 556 U.S. at 679; *see also Libby v. Merrill*, 2003 WL 21756830, at *5 (D. Me. July 29, 2003) ("[T]he mere possibility of future harm, without some compelling evidence of susceptibility or inevitability, does not satisfy article III standing requirements for injunctive relief to issue.")

(quoting *Comfort v. Lynn School Comm.*, 150 F. Supp. 2d 285, 288 (D. Mass. 2001)). That is not simply because no new eviction warrants for those rooms have been issued since Marshal Powell returned the original warrants unexecuted. *See* Amended Complaint ¶ 90.[4] If that were the only defect in the claim concerning other rooms, I would not recommend dismissal with prejudice based on a lack of standing. More fundamentally, Sasmor cannot have a property interest in those rooms because his claim to such an interest derives from his allegation that he obtained permission to use the rooms from their former occupants after they moved out of 287 Franklin. *See* Amended Complaint ¶ 48.[5] But those former occupants themselves appeared in the Housing Court to defend against the eviction proceedings. *See* Sasmor Decl. ¶ 39. Sasmor's predecessors in interest having had a full and fair opportunity to litigate the merits of the eviction proceedings in state court,

---

[4] *See also* DE 56 (Declaration of Jon Sasmor) ("Sasmor Decl.") ¶ 60 & Ex. X. Sasmor's declaration is extraneous to the pleadings and therefore not part of the record for purposes of analyzing the motions to dismiss. I cite it only to observe that there appears to be no reason to expect that Sasmor is in a position to amend his pleading further by alleging in good faith that he has standing to assert claims arising from eviction proceedings with respect to the rooms previously occupied by Luis Campos, Willie Osterweil, and Vilija Skubutyte.

[5] To be sure, Sasmor also appears to assert a property interest in the rooms that derives from his own lease and from the doctrine of adverse possession. *See* DE 53-1 at 26-28. The former theory fails because his lease explicitly refers only to his own room, not those of other residents. *See* Meier Decl. Ex. 2 at 8 (lease rider); DE 58, Ex. A (Housing Court Decision and Order) at 5 ("[T]he attached lease rider specifies that Jon Sasmor and Lisa Lin were renting apartment 4F…. The lease includes an addendum clause which allows the terms of the rider to 'override(s) any and all provision of the Standard Form Lease.'"). The latter is a plain misreading of Section 711 of the RPAPL and Section 26-521 of the New York City Administrative Code, which provide procedural protections against self-help eviction to tenants who have occupied premises for more than 30 days, but which do not give rise to independent rights of possession. *See, e.g.*, Carmody Wait 2d New York Practice § 90:38 ("[A] nonpayment proceeding [pursuant to RPAPL 711(2)] can be used to remove a tenant from possession only where the tenant is holding the premises under an existing rental agreement that bestows upon a tenant the right to occupy the premises as the quid pro quo for the tenant's payment of rent to the landlord.") (citing *Saba Realty Partners LLC v. Int'l Gold Star Inc.*, 906 N.Y.S.2d 732, 734 (Civ. Ct. Kings Co. Aug. 12, 2010); N.Y. City Admin. Code § 26-521 (making it unlawful to evict without a court order "an occupant of a dwelling unit who has *lawfully* occupied the dwelling unit for thirty consecutive days or longer.") (emphasis added).

Sasmor is bound by the judgments awarding possession of those rooms to the Trust. *See Bello v. Santiago*, 889 N.Y.S.2d 504 (N.Y. Sup. Ct. 2009) (successors in interest to a property right are considered to be in privity with the original holder of the right, and are therefore bound by judgments against the original holder).

Finally, to the extent Sasmor complains of being "excluded" not only from rooms to which he has no cognizable property interest but also "from his possessions therein[,]" *see* DE 51-1 at 8, his claim fares no better. That asserted deprivation of personal property is not a cognizable harm because he has not alleged that he had any personal property in any of the rooms from which occupants have been evicted, that he sought to recover such property, or that any defendant stood in the way of any such effort. Moreover, the parties appear to agree that Sasmor is in any event entitled to any such personal property, *see* DE 48-1 (Judicial Defendants' memorandum of law) at 29 (citing cases), and so any claim relating to Sasmor's personal property appears to be moot.

In short, Sasmor cannot show that he has suffered or will suffer any cognizable injury as the result of the Judicial Defendants' participation in the issuance of "all persons" warrants pursuant to New York law. As a result, even if Sasmor is correct that that law is unconstitutional, he lacks standing to litigate the issue against the Judicial Defendants. I therefore respectfully recommend that the court dismiss with prejudice Sasmor's claims against defendants Fisher and Alt.

    C.    <u>Defendant Powell</u>

Like the Judicial Defendants, Powell makes several different arguments in support of his motion for judgment on the pleadings. He contends that Sasmor lacks standing, that Powell is not a real party in interest to this action, and that Powell is immune from suit by operation of the doctrine

of qualified immunity. Here again, regardless of any other available basis for relief,[6] I conclude

that the court can and should dismiss all of the Section 1983 claims against Powell with prejudice

because Sasmor cannot demonstrate a cognizable injury arising from any of Powell's alleged

constitutional violations. Moreover, that conclusion in turn suffices to warrant dismissal of all

other claims against Powell as well.

>  1.  Count One: "All Persons" Warrants

As explained above with respect to the Judicial Defendants, Sasmor can demonstrate no

cognizable injury arising from the issuance of "all persons" warrants pursuant to New York law.

Accordingly, for the same reason that I recommend dismissal of the first cause of action with

respect to the Judicial Defendants, I respectfully make the same recommendation with respect to

Powell.

>  2.  Count Two: "Wildcard" Warrants

In his second cause of action, Sasmor claims a violation of the Fourth and Fourteenth

Amendments on the basis that the warrants of eviction were unconstitutionally "imprecise," in that

they did not "describe the subject premises with sufficient particularity to enable its objective

identification." Amended Complaint ¶¶ 136, 137. Here again, because Sasmor is estopped from

claiming a property interest in any of the subject premises, he cannot establish that he has suffered

a constitutional deprivation as a result of the allegedly imprecise language of the warrants.[7]

---

[6]   While the court need not address the issue of qualified immunity, I conclude that Powell is also entitled to dismissal on that basis. He is alleged to have executed a facially valid warrant in accord with a state law that has never been held unconstitutional, and all of the alleged harms that Sasmor claims flow exclusively from that conduct, regardless of the propriety or impropriety of other aspects of Powell's conduct that Sasmor criticizes as unlawful.

[7]   Even if he were not so estopped, this second claim would fail on its own terms: however imprecise the wording of the warrants may have been, Sasmor acknowledges that Powell did not rely on that wording in executing the warrants – he relied instead on Goldberger's guidance – and

3.    Count Three: Granting Possession To The Trust

In his third cause of action, Sasmor alleges a constitutional violation based on the fact that the eviction warrants granted possession of the subject premises to the Trust. Just as he is estopped from claiming any property interest in the premises that would support a cognizable claim of harm, Sasmor is also estopped from prosecuting the legal theory on which he bases this claim – namely, that the Trust is "not a person or entity itself and is not capable of owning property in its name[.]" Amended Complaint ¶ 139. Sasmor made that same argument in the Housing Court proceeding in which he was a named party, and the court explicitly and necessarily rejected it when, after a trial, the court awarded possession of the room Sasmor occupied to the Trust. *See* DE 58, Ex. A (Housing Court Decision and Order) at 10 ("Although [Sasmor] w[as] able to present evidence of inconsistencies in some of the testimony and documents in relation to the trust agreement ... the evidence was insufficient to prove, by a preponderance of the evidence, that [the Trust] is not entitled to possession of [Apartment 4F]."); *id.* at 12 ("Although [Sasmor] argue[s] that the petitioner-trust cannot hold property or bring a lawsuit in its own name, a trust is a legal entity capable of owning property or bringing a lawsuit.") (citing *In re Ihmsen's Estate*, 3 N.Y.S.2d 125 (App. Div. 1938); *Bedford Apts. Co. v. Coutts*, NYLJ, Nov. 30, 2000, at 29, Col. 6 (App. Term). Having had a full and fair opportunity to litigate the issue in the Housing Court, Sasmor is estopped from raising it again here. *See*, *e.g.*, *Sullivan*, 487 F. Supp. 2d at 64-65; *Moran*, 346 F. Supp. 2d at 515.

---

in any event Powell executed the warrants in the correct locations. If the description of the subject premises had led Powell to execute the warrants at any location other than the rooms formerly occupied by Fletcher, Diaz, and Rosenbaum, Sasmor could not claim, as he does in Count One, that the execution of those warrants deprived him of his alleged interest those premises.

17

4.      Count Four: Powell's Refusal To Display His Badge And The Warrants

In his fourth cause of action, Sasmor asserts that Powell violated his constitutional rights when he executed the eviction warrants for the rooms formerly occupied by Fletcher, Diaz, and Rosenbaum on July 13 and 20, 2011, by refusing to show Sasmor his badge or copies of the warrants. Once again, Sasmor's established lack of any property interest in those rooms is fatal to his ability to assert a cognizable injury arising from that claimed violation. Moreover, even if Sasmor could demonstrate a property interest in the rooms, he has identified no legal authority to support the proposition that in executing the warrants, Marshal Powell violated any right that Sasmor enjoyed under federal law to demand to see Powell's badge or the warrants. He also cannot demonstrate any cognizable harm that might have flowed specifically from Powell's refusal to display those items (as opposed to any harm flowing from the actual execution of the warrants). I therefore respectfully recommend that the court dismiss Count Four with prejudice.

5.      Count Five: Warrantless Entry

In his fifth cause of action, Sasmor alleges that Powell violated his constitutional rights by entering his home "without permission and without a valid warrant" on July 13, July 20, and September 20, 2011. Amended Complaint ¶ 145. To the extent this count relates to Powell's conduct in July 2011, there is no dispute that he acted on the basis of warrants that were issued in accordance with New York law. That portion of the claim thus rests on the proposition that the warrants Powell executed were not valid because they were issued in violation of the federal constitution. In that sense the claim is duplicative of the first three, and must fail for the same reasons.

18

To the extent the claim relates to the allegations that a process server, acting as Powell's agent, took certain actions at 287 Franklin on September 20, 2011, I conclude that the claims fail for slightly different reasons. The Amended Complaint does not allege that the process server entered any of the residential rooms at 287 Franklin Avenue. I therefore interpret the claim to be based on an alleged trespass into the building's common areas.

I have no reason to conclude that Sasmor is estopped from having a sufficient property interest in those common areas to support a claim for an unconstitutional entry into those areas under Section 1983. Instead, I conclude that Sasmor's claim is not actionable because, even if the process server's entry into the common areas of the building violated Sasmor's Fourth Amendment rights, the violation was "a *de minimis* level of imposition with which the Constitution is not concerned." *Ingraham v. Wright*, 430 U.S. 651, 674 (1977).

Sasmor alleges only that the process server entered the building and slipped eviction notices over the doors of certain occupants' rooms. He does not allege that the process server searched the premises or that his actions resulted in any lasting deprivation of Sasmor's property interests. *See Artes-Roy v. City of Aspen,* 31 F.3d 958, 962-63 (10th Cir.1994) (building inspector's warrantless entry into plaintiff's foyer, even if Fourth Amendment violation, was *de minimis*). At most, the Amended Complaint alleges that the alleged unlawful entry by Powell's agent on September 20, 2011, resulted in some minor damage to the front door of a building that Sasmor does not and cannot claim to own. *See Amended Complaint.* ¶ 86. Such an insubstantial injury does not give rise to an actionable constitutional violation. *See*, *e.g.*, *Porter v. Jewell*, 453 F. App'x 934, 937 (11th Cir. 2012) (finding *de minimis* injury, not actionable under the Fourth Amendment, where officer banged on and kicked tenant's apartment door several times cracking the doorframe

19

and damaging the deadbolt); *see also United States v. Jacobson*, 466 U.S. 109, 125 (1984) (destruction of small amount of powder during field test for cocaine a *de minimis* seizure). I therefore respectfully recommend that the court dismiss Count Five with prejudice.

      6.     <u>Count Six: Civil Rights Conspiracy</u>

Sasmor concedes that his conspiracy claim, *see* Amended Complaint ¶¶ 146-148 (citing 42 U.S.C. § 1985) is "insufficiently pleaded" because he has not alleged that the conduct of which he complaints was the result of any unlawful discriminatory animus. *See* DE 53-1 (Sasmor's memorandum of law) at 26. His claim should therefore be dismissed. *See Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993). The pleading defect is potentially curable, and by itself warrants only dismissal without prejudice.[8] I nevertheless recommend dismissal with prejudice because, for the reasons set forth above, even if the defendants acted with an improper motive, they did not cause Sasmor to suffer any cognizable harm that would support a cause of action for the alleged conspiracy to violate of his civil rights.

      7.     <u>Counts 7-13: State Law Claims</u>

In light of my conclusion that all of Sasmor's claims under federal law should be dismissed with prejudice, I also conclude that the court should decline to exercise supplemental jurisdiction over the remaining claims under state law. *See* 28 U.S.C. § 1367(c)(3) (providing that a court "may" decline to exercise such supplemental jurisdiction after dismissal of all claims over which it has original jurisdiction); *Castellano v. Bd. of Trs.*, 937 F.2d 752, 758 (2d Cir. 1991) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)) (suggesting that a court "should" do so).

---

[8] Sasmor contends that he would, if allowed, allege "that the Defendants discriminated against him because he is not a Chasidic Jew." DE 53-1 at 26. At a minimum, the record discloses no basis upon which Sasmor might plausibly make such an allegation with respect to Fisher, Alt, and Powell consistent with the requirements of Federal Rule of Civil Procedure 11(b).

D.    <u>The Private Defendants</u>

Sasmor asserts all of the same claims against the Private Defendants that he asserts against Powell, and I therefore recommend the dismissal of those claims with prejudice with respect to the Private Defendants for the same reasons as set forth above with respect to Powell. In addition because the Private Defendants are not state actors, they may only be held liable on the federal causes of action if they conspired with or engaged in joint activity with defendants who are state actors – namely, Powell, Fisher, and Alt. *Ginsberg v. Healy Car & Truck Leasing, Inc.*, 189 F.3d 268, 271 (2d Cir.1999); *Puletti v. Patel*, 2006 WL 2010809, at *6 (E.D.N.Y. 2006); *Storck v. Suffolk Cty. Dep't. of Soc. Servs.*, 62 F.Supp.2d 927, 940 (E.D.N.Y. 1999). Dismissal of all of the federal causes of action against those state actors would require the dismissal of those claims against the Private Defendants as well. *See Caporicci v. Nassau County Police Dept.*, 2007 WL 764535, at *5 (E.D.N.Y. 2007) (citing *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995)).

E.    <u>Preliminary Injunction</u>

If the court accepts my recommendation to dismiss the Amended Complaint in its entirety, Sasmor's motion for a preliminary injunction will be moot. Even if some of Sasmor's claims survive, however, I would in any event conclude that Sasmor cannot meet the requirements for a preliminary injunction. For the reasons summarized above, among others, he is not likely to succeed on the merits of his claims; and he unable to demonstrate anything more than a mere possibility that he will suffer irreparable harm in the absence of injunctive relief.

21

III.    Recommendation

For the reasons set forth above, I respectfully recommend that the court grant the

defendants' motions to dismiss the Amended Complaint in its entirety, with prejudice as to the

causes of action asserted under federal law, and that it deny plaintiff Sasmor's motion for a

preliminary injunction as moot.

IV.    Objections

Any objections to this Report and Recommendation must be filed no later than March 11,

2013.[9] Failure to file objections within this period designating the particular issues to be reviewed

waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile,*

*P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

SO ORDERED.

Dated: Brooklyn, New York
       February 21, 2013

_____/s/_____
JAMES ORENSTEIN
U.S. Magistrate Judge

---

[9] Although he is proceeding *pro se*, Sasmor has arranged to receive electronic notification of all filings in this case via the court's ECF docketing system. He will therefore receive this document at the time of its filing on the docket.